IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-19-RLV
(5:11-cr-53-RLV-DCK-1)

| | | |
|---|---|---|
| CARITINO MUJICA-VARGAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 5).

**I. BACKGROUND**

1. Offense Conduct

On April 8, 2010, numerous law enforcement agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, and the North Carolina State Bureau of Investigation, began an investigation into the drug trafficking activities of Petitioner. The investigation led to observations of 12 controlled purchases of cocaine, totaling more than two kilograms, and two controlled purchases of methamphetamine, totaling 72 grams, from Petitioner and his associates, including Norberto Rivera Aguilar. (Criminal Case No. 5:11-cr-53, Doc. No. 69 at 5: PSR). Throughout the investigation, law enforcement officials and confidential informants ("Cis") observed Petitioner receiving cocaine and methamphetamine

1

from couriers and then providing it to customers or Aguilar for distribution. (Id.).

According to a CI, on July 18, 2011, Petitioner received one ounce of cocaine and one ounce of methamphetamine from a courier. (Id. at 7). The courier was observed at Petitioner's residence at the time the transaction took place. (Id.). On August 22, 2011, law enforcement officials executed a search warrant on Petitioner's residence. (Id.). During the search, officials found $5,000 cash, a digital scale, a kilogram press, two handguns, and a rifle. (Id.). Following the search, Petitioner was arrested. (Id.). Ultimately, the investigation showed that Petitioner was Aguilar's cocaine supplier. (Id. at 8). Petitioner supplied at least 647 grams of cocaine and was involved in at least three undercover drug transactions totaling at least 112 grams of cocaine and 28 grams of methamphetamine. (Id. at 9). In addition, Petitioner was intercepted on wiretaps discussing drug transactions and discussing wiring money back to a drug source in Mexico. (Id.).

2. Procedural History

On September 20, 2011, a grand jury in the Western District of North Carolina charged Petitioner, along with four codefendants, with conspiracy to possess with intent to distribute five kilograms or more of cocaine, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (Id., Doc. No. 30: Indictment). Petitioner was also solely charged with knowingly and unlawfully using and carrying one or more firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Id.). Petitioner entered into a plea agreement in which he agreed to plead guilty to one count of conspiring to possess with intent to distribute between 500 grams and two kilograms of cocaine and one count of knowingly and unlawfully using and

carrying one or more firearms during and in relation to a drug tracking crime. (Id., Doc. No. 60 at 1: Plea Agreement). As part of the agreement, Petitioner waived his right to appeal or attack his conviction and sentence in a post-conviction proceeding, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 4-5).

On December 15, 2011, Petitioner pled guilty before U.S. Magistrate Judge David S. Cayer. (Id., Doc. No. 62 at 1: Acceptance and Entry of Guilty Plea). During his plea hearing, conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Petitioner was placed under oath, and Judge Cayer explained to him the charges to which he was pleading guilty. (Id.). In response, Petitioner agreed that he was in fact guilty of these charges. (Id.). Petitioner affirmed that he had discussed with his attorney the consequences that pleading guilty would have on his immigration status. (Id.). Petitioner also acknowledged that his guilty plea may "result in deportation or removal from the United States." (Id. at 2). Petitioner affirmed that he understood his rights to plead not guilty and stand trial. (Id. at 2-3). The Government summarized the key terms of Petitioner's plea agreement. (Id. at 3). Petitioner affirmed that he understood the terms of his agreement and that he agreed with those terms. (Id.). This Court asked if Petitioner had been "threatened, intimidated, or forced . . . to enter [a] guilty plea," to which Petitioner responded, "no." (Id.). At the conclusion of the Rule 11 hearing, this Court found Petitioner's plea to be knowingly and voluntary made and accepted it. (Id. at 4).

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR"), recommending an advisory guideline term of 60 months for the drug conspiracy count and a mandatory consecutive term of 60 months for the firearms count. (Id., Doc. No. 69 at 15). In calculating the offense level, the probation officer found that Petitioner was a base

3

level 26 and applied a reduction of three levels due to the acceptance of responsibility, resulting in a total offense level of 23 which, when coupled with Petitioner's criminal history category of I, resulted in a guidelines range of 46 to 57 months. (Id.). Because the statutory mandatory-minimum term of imprisonment for Petitioner's drug conviction was five years, however, the guidelines range became 60 months. (Id.).

At his sentencing hearing on February 4, 2013, this Court again inquired whether Petitioner understood the guilty plea he had entered into before the magistrate judge. (Id., Doc. No. 127 at 2: Tr. of Sentencing). This Court asked Petitioner whether he was pleading guilty to both counts freely and voluntarily, to which Petitioner responded, "yes." (Id.). Petitioner answered affirmatively that he was pleased with the services of his attorney, and offered no objection to the stipulation that there was a factual basis to support the guilty plea for both counts. (Id. at 2-3). This Court then informed Petitioner that upon his release from prison he would be turned over to a duly authorized immigration official for possible deportation. (Id. at 9). This Court inquired whether Petitioner was aware of the potential consequences of his guilty plea and conviction in terms of deportation. (Id. at 9-10). Petitioner agreed that he was aware of the consequences his guilty plea had on his immigration status. (Id.).

Petitioner was ultimately sentenced to a total of 120 months in prison, followed by 48 months of supervised release. (Id., Doc. No. 95: Judgment). This Court entered judgment on February 14, 2013, and Petitioner did not appeal. (Id.). In his motion to vacate filed on February 3, 2014, Petitioner contends that his defense counsel was ineffective for: (1) advising and permitting the entry of an unknowing and involuntary plea to the second count, 18 U.S.C. § 924(c); (2) allowing a guilty plea to be entered to the second count and thus forfeiting

4

Petitioner's ability to qualify for a "safety valve" reduction; and (3) failing to inform Petitioner of his rights under the Vienna Convention on Consular Relations ("VCCR") to speak to the Mexican Consulate and to adequately explain the immigration consequences of his guilty plea. On June 24, 2014, this Court entered an Order for the Government to respond and, after receiving an extension of time, the Government filed its Response on October 24, 2014.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only

5

grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When analyzing an ineffective assistance of counsel claim in the context of a guilty plea, due regard must be given to a defendant's "[s]olemn declarations in open court." See Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005) (affirming the district court's decision not to hold an evidentiary hearing because all of defendant's claims were contradicted by statements made during the plea colloquy and the terms of the plea agreement). Specifically, any statement made by a defendant must be presumed to be true and is strong evidence that suggests the voluntariness of a plea. See United States v. Millner, 329 F. App'x 396, 398 (4th Cir. 2009) (unpublished); United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991). Thus, there is a strong presumption that the plea is final and binding. United States v. Belk, 479 F. App'x 531, 532 (4th Cir. 2012) (unpublished).

1. Petitioner's claim that defense counsel rendered deficient performance by advising and permitting the entry of a plea to 18 U.S.C. § 924(c) and that Petitioner is actually innocent of the § 924(c) conviction.

Petitioner first claims that counsel was ineffective for allowing Petitioner to plead guilty to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §

6

924(c), and that he is in fact innocent of that charge. Petitioner alleges, without support, that his attorney wrongfully coerced him to plead guilty to the firearms count because his attorney was aware that Petitioner stored his guns at his home, but there were no drugs found when the police raided his home and uncovered the weapons. Therefore, Petitioner contends that he did not use and carry one or more firearms in violation of § 924(c). For the same reasons, Petitioner claims he is actually innocent of the § 924(c) count.

As noted, Petitioner pled guilty to the § 924(c) count. It is well established that when pleading guilty to a charge, a voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge," and constitutes an admission of all "material facts alleged in the charge." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (quoting McCarthy v. United States, 394 U.S. 459, 466, (1969)). Here, there was ample evidence to support this Court's finding of a sufficient factual basis to accept Petitioner's guilty plea to the § 924(c) violation. Petitioner was observed in his residence with a drug courier, and a CI confirmed that a drug transaction occurred. (Criminal Case No. 5:11-cr-53, Doc. No. 69 at 7). Later, after Petitioner's arrest, officers found three weapons in the same residence, along with scales used to measure drug weights and other evidence of drug trafficking. (Id.). Because evidence existed that Petitioner made a drug deal at his house and weapons were later found at his home, there was more than enough evidence to support a factual basis for Petitioner's guilty plea to a violation of § 924(c), including that weapons were accessible and present during the time of his drug offense. See (Id., Doc. No. 127 at 2: Tr. of Sentencing). Here, by pleading guilty to the § 924(c) charge, Petitioner waived his right to challenge the sufficiency of the evidence presented as a factual basis for his guilty plea. Petitioner has offered no extraordinary circumstances

necessary to rebut the truth of his sworn statements made during the Rule 11 colloquy and at sentencing. Lemaster, 403 F.3d at 221. Therefore, his claim of actual innocence fails. Furthermore, Petitioner has not offered any evidence to support his self-serving allegation that he was coerced by his counsel, or that his counsel's performance fell outside of the wide range of accepted performance as required in the first prong of Strickland. In sum, Petitioner's first claim is without merit.

2. Petitioner's claim that defense counsel rendered deficient performance by advising and permitting the entry of a plea to the § 924(c) charge because it rendered Petitioner ineligible to receive a reduction in his sentence under the safety-valve provision of U.S.S.G. § 5C1.2.

In a claim similar to his first claim, Petitioner next contends that defense counsel was ineffective for allowing him to plead guilty to the § 924(c) charge because Petitioner consequently lost his entitlement to safety-valve relief. Under the safety-valve provisions of U.S.S.G. § 5C1.2, a defendant is entitled to a sentence in accordance with the applicable guidelines range without regard to any statutory minimum sentence when the following conditions are met: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. See U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).

Assuming he truthfully disclosed his criminal conduct before sentencing, Petitioner appears to meet four of the five safety-valve provisions. The fact that the offense involved firearms, however, as evidenced in his § 924(c) conviction, makes him ineligible to receive a reduction under the safety-valve provision. As discussed in the preceding section, this Court found a sufficient factual basis to support Petitioner's guilty plea to § 924(c) charge based on the stipulated facts in this case and Petitioner's admission that he was in fact guilty. Further, Petitioner has offered no evidence of coercion of any type made by defense counsel in relation to his guilty plea to the § 924(c) count. In light of Petitioner's sworn statements associated with his plea of guilty, this Court's finding of a factual basis to support a guilty plea, and Petitioner's lack of evidence of extraordinary circumstances or coercion, Petitioner has not shown that defense counsel provided deficient performance in advising Petitioner regarding his plea to the § 924(c) charge.

3. Petitioner's contention that defense counsel rendered deficient performance by failing to discuss with Petitioner his rights under the Vienna Convention on Consular Relations and by failing to adequately explain the immigration consequences of a guilty plea.

In his last claim, Petitioner contends that counsel was ineffective for not explaining the collateral consequences of his guilty plea and that his counsel owed him a duty to inform him of his rights to contact his consulate under the Vienna Convention on Consular Relations ("VCCR"). This claim is without merit. In Padilla v. Kentucky, 559 U.S. 356, 374 (2010), the Supreme Court held that counsel's performance is deficient if there is a failure to notify a client of the possibility of deportation in relation to a guilty plea. The record shows that Petitioner was clearly informed of the possibility of deportation in compliance with Padilla. Here, during

9

Petitioner's Rule 11 colloquy, he informed the Court (1) that he had spoken with his attorney about the consequences of pleading guilty to both 21 U.S.C. §§ 846 and 841(b)(1)(B) and 18 U.S.C. § 924(c); (2) that he was aware of the possible deportation issues that might arise as a result of pleading guilty to both charges; (3) that he was pleased with his attorney's representation; and (4) that he was never threatened or forced to enter a guilty plea. (Criminal Case No. 5:11-cr-53, Doc. No. 62 at 2-3). Petitioner has offered no evidence of "extraordinary circumstances" required under Lemaster to overcome the sworn statements he made during the Rule 11 colloquy to refute these facts. Then, again at sentencing, this Court advised Petitioner of the consequences his guilty plea might have on his immigration status and Petitioner again represented to the Court that he was, in fact, aware of those consequences. (Criminal Case No. 5:11-cr-53, Doc. No. 62 at 3; Doc. No. 127 at 9). In sum, Petitioner's claim that defense counsel provided ineffective assistance of counsel by failing to explain the collateral consequences of his guilty plea is without merit.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: October 30, 2014

Richard L. Voorhees
United States District Judge